UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL GAHAGAN                          CIVIL ACTION


VERSUS                                    NO: 15-2540


UNITED STATES CITIZENSHIP                 SECTION: R
AND IMMIGRATION
SERVICES

## ORDER AND REASONS

This Freedom of Information Act ("FOIA") case involves a dispute between plaintiff Michael Gahagan, an immigration attorney, and the United States Citizenship and Immigration Service ("USCIS") regarding plaintiff's request for agency records concerning his client.  Plaintiff alleges that USCIS has failed to respond adequately to his lawful FOIA requests and seeks declaratory relief and attorney's fees.  USCIS claims that it has fully complied with its statutory obligations under FOIA.  Both parties have filed cross motions for summary judgment.  For the following reasons, the Court DENIES plaintiff's motion and GRANTS IN PART AND DENIES IN PART USCIS's motion for summary judgment.

## I.    FACTS

In his complaint, plaintiff alleges that he filed a lawful FOIA request with USCIS seeking three sets of documents: (1) a copy of his client's "entire immigration file ('A-File')"; (2) "any electronic and/or handwritten notes written by any USCIS employee" in relation to applications and petitions filed by his client; and (3) "a copy of any email sent to, or sent from, any government employee working at the USCIS New Orleans Field Office which mention [his client's] name or Alien number," including emails from personal email addresses.[1]   Plaintiff further alleges that the National Records Center ("NRC"), a section within USCIS, acknowledged receipt of his request on April 24, 2015, and that USCIS failed to respond adequately within 20 business days, as required by law.[2]   Plaintiff' complaint seeks a court order mandating that USCIS conduct an adequate search for documents responsive to his request, an injunction barring USCIS from withholding responsive documents without lawful authority, and an award of costs and attorney's fees.[3]

---

[1]      R. Doc. 1 at 7.

[2]      *Id.*

[3]      *Id.* at 10.

On August 11, 2015, plaintiff moved for summary judgment, arguing that USCIS failed to comply with FOIA and that plaintiff is entitled to judgment as a matter of law.[4]  USCIS responded by filing an opposition brief[5] and a declaration by Jill Eggleston.[6]  Through the Eggleston Declaration, USCIS stated that its FOIA review process was ongoing but that it had thus far located 592 pages of responsive agency records.[7]  Of those, the agency had decided to release 555 pages in their entirety, while 32 pages were released in part, and one page was withheld in full pursuant to a FOIA exemption.[8]  USCIS also stated that it had referred four pages of responsive records to the Department of State for further processing.[9]  According to USCIS, that information was provided to plaintiff by letter dated July 31, 2015.[10]  Along with the Eggleston declaration, USCIS filed a chart, called a *Vaughn* index, which describes various pages of records that

---

[4]      R. Doc. 6-2.

[5]      R. Doc. 9.

[6]      R. Doc. 9-1.

[7]      *Id.* at 5.

[8]      *Id.* at 5-6.

[9]      *Id.* at 6.

[10]      *Id.*

USCIS decided to withhold (wholly or partially), cites the applicable FOIA exemption, and explains why USCIS believes that the exemption applies.[11]

On October 14, 2015, USCIS filed its own motion for summary judgment,[12] as well as a supplemental declaration by Eggleston.[13]   The supplemental declaration stated that USCIS's search was complete and that the agency had located an additional 32 pages of records responsive to plaintiff's FOIA request.[14]   Of those, USCIS released 23 pages in full, while six pages were withheld in part, and three pages were withheld in full.[15] USCIS also submitted a supplemental *Vaughn* index explaining its withholding decisions with respect to the newly discovered documents.[16] USCIS argues that its two declarations and *Vaughn* indexes demonstrate that it has fully complied with its obligations under FOIA and that it is therefore entitled to summary judgment.[17]

---

[11]     *Id.* at 8-29.

[12]     R. Doc. 18-1.

[13]     R. Doc. 18-3.

[14]     *Id.* at 3.

[15]     *Id.*

[16]     *Id.* at 4-9.

[17]     R. Doc. 18-1 at 2.

Plaintiff contends that USCIS has not met its burden of proving full FOIA compliance and raises a number of challenges to USCIS's declarations and *Vaughn* index entries.[18]  Specifically, plaintiff argues that: (1) the Court should strike the Eggleston declaration from the record for lack of personal knowledge; (2) the Eggleston declarations fail to demonstrate that USCIS has performed a legally adequate search for responsive records; (3) USCIS's referral of four pages of records to the Department of State for processing constitutes a FOIA violation; and (4) the original and supplemental *Vaughn* indexes fail to adequately explain USCIS's decision to withhold, in whole or in part, various documents responsive to plaintiff's FOIA request.

## II.   STANDARD

Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, and there is no genuine issue of material fact, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.  *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C.Cir. 1983).  The agency may satisfy its burden of proof

---

[18]    R. Doc. 19-2.

through the submission of affidavits that identify the documents at issue and explain why they fall under the claimed exemption. *Cooper Cameron Corp. v. U.S. Dep't of Labor, Occupational Safety & Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002). These affidavits must be clear, specific and reasonably detailed while describing the withheld information in a factual and nonconclusory manner. *Id.* Further, the court will not grant summary judgment if there is contradictory evidence or evidence of agency bad faith. *See Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir .1994) (quoting *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980)). If the agency meets all of these requirements, the court will normally accord the affidavits substantial weight. But a reviewing court may also inspect the content of agency documents *in camera* to determine whether they fall under any of the FOIA exemptions. See 5 U.S.C. ' 552(a)(4)(B).

## III.   DISCUSSION

### A.   Eggleston's Personal Knowledge

USCIS has submitted two declarations by Jill Eggleston in connection with this case--a declaration dated August 20, 2015, and a supplemental declaration dated October 5, 2015. In his reply brief in support of his motion for summary judgment, plaintiff argues that Eggleston's original

6

declaration should be stricken from the record because the declarant lacks personal knowledge of the declaration's contents.[19]   He makes no such claim with respect to the supplemental declaration.

Federal Rule of Civil Procedure 56(c)(4) requires declarations offered in support of, or in opposition to, summary judgment to be based on personal knowledge.  Fed. R. Civ. P.  56(c)(4); *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012). While a declaration need not specifically state that it is based on personal knowledge, it must include enough factual support for a court to determine that its averments were based upon the personal knowledge of the declarant.   Fed. R. Civ. P. 56(c)(4); *see also Thomas v. Atmos Energy Corp.*, 223 Fed. App'x. 369, 374 (5th Cir. 2007).   When considering a motion for summary judgment, a court disregards any portion of a declaration that fails to comply with Rule 56(c)(4).    *Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 531 (5th Cir. 1992).

Although the Fifth Circuit has not addressed the issue, a number of courts have held that an agency's declarant need not have participated personally in the FOIA search to meet the personal knowledge requirement.

---

[19]      R. Doc. 12 at 3.

*See Dugan v. Dep't of Justice*, 82 F. Supp. 3d 485, 496 (D.D.C. 2015) (concluding that declarant was competent to testify despite having not participated directly in processing the FOIA request); *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 251 (D. Conn. 2012) (concluding that an "attenuated supervisor" of the person who conducted actual FOIA search had personal knowledge to give declaration). Rather, a declarant in a FOIA case satisfies Rule 56(c)(4) if she attests to her personal knowledge of the procedures used in handling plaintiff's FOIA request and her familiarity with the documents in question. *See, e.g., Spannaus v. U.S. Dep't of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987); *Gahagan v. U.S. Citizenship & Immigration Servs.*, No. CIV.A. 14-1268, 2015 WL 5321749, at *5 (E.D. La. Sept. 11, 2015); *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008)*; Berman v. C.I.A.*, 378 F. Supp. 2d 1209, 1216 n.7 (E.D. Cal. 2005), *aff'd*, 501 F.3d 1136 (9th Cir. 2007)*.* The Court finds this precedent persuasive.

Here, the Eggleston declaration satisfies Rule 56(c)(4). Eggleston states that she is the Assistant Center Director for the FOIA Unit of the NRC and that she is personally familiar with USCIS's standard process for

responding to FOIA requests.[20]   Eggleston also makes clear that she was responsible for overseeing and coordinating USCIS's response to plaintiff's FOIA request, and she attests to her familiarity with USCIS's search for records responsive to that request.[21]   Finally, Eggleston states that "the statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties."[22]   In sum, Eggleston attests to her active role in USCIS's search for records responsive to plaintiff's request, as well as her familiarity with both the search procedures that the agency used and the documents at issue.   Thus, the Court finds that Eggleston is competent to testify on the issues at hand, and it will not strike the Eggleston declaration from the record.

### B.   Adequacy of USCIS's Search

Next, the Court considers the adequacy of USCIS's search for records responsive to plaintiff's FOIA request.   Plaintiff  argues that USCIS has not demonstrated that it conducted an adequate search, as mandated by FOIA,

---

[20]     R. Doc. 9-1 at 1.

[21]     *Id.* at 1-2.

[22]     *Id.* at 2.

because it has not: (1) described its search methods in a nonconclusory manner; (2) averred that it searched all files likely to contain responsive documents; (3) identified which databases and email accounts were searched; or (4) explained why it searched for documents in some places, but not in others.[23]   USCIS responds that the two Eggleston declarations describe its efforts to locate responsive documents in great detail and demonstrate that its search complied with FOIA's mandate.[24]

Under Fifth Circuit law, an agency may demonstrate the adequacy of its search by showing that it used "methods which can be reasonably expected to produce the information requested." *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).   The issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."   *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).   To demonstrate the adequacy of its search, the agency may submit affidavits or declarations explaining the scope and method of the search in reasonable detail and in a nonconclusory fashion.   *Brown v. F.B.I.*, 873 F. Supp. 2d

---

[23]     R. Doc. 19-2 at 7-20.

[24]     R. Doc. 18-1 at 7.

388, 399 (D.D.C. 2012) (citing *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994)).  These documents "are afforded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *Id.* (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Although plaintiff contends that Eggleston's declarations were made in bad faith, neither of his two arguments for this proposition is persuasive. First, plaintiff cites Eggleston's statement in her original declaration that "[a]ll documents responsive to the Plaintiff's FOIA request would be contained within the subject A-file."  Plaintiff argues that this statement was "untruthful" because plaintiff's FOIA request sought, among other things, Government employees' emails, and such documents are never contained within an immigrant's A-file.[25]  This argument quotes Eggleston out of context and badly mischaracterizes her declaration.  The two sentences that follow immediately after plaintiff's quotation state that "the USCIS's New Orleans Field Office has been . . . tasked to search for hand written and email communications about [plaintiff's client] that may not

---

[25]     R. Doc. 19-2 at 6-7.

have been included in the A-file.  That search is ongoing."[26]  Viewed in context, Eggleston's declaration is most naturally read to mean that all documents responsive to the *first part* of plaintiff's request--his request for USCIS's " immigration file" on his client--would be found in the A-file, while the *notes and emails* that plaintiff requested would be in files within the New Orleans Field Office that remain to be searched.  Plaintiff does not challenge the truthfulness of that assertion, and the Court finds that it does not evince bad faith.

Second, plaintiff argues that Eggleston's statement in her supplemental declaration that "six (6) pages are withheld in part, and twenty-three (23) are released in full" was made in bad faith because that statement was made on October 5, 2015, and plaintiff did not receive the documents in question until October 21, 2015.  Plaintiff apparently equates USCIS's statement that documents "are released" with a claim that USCIS had already sent plaintiff those documents as of the date the statement was made--a claim that plaintiff contends must have been false, given the chronology.  But plaintiff gives no explanation for his strained interpretation of the declaration's language, and it is not clear why the

---

[26]     R. Doc. 9-1 at 5.

words "are released" should be taken to mean "have already been released." Eggleston's statement is more naturally read to mean that USCIS had reached a final decision with respect to plaintiff's FOIA request, whereby certain documents "are released in full." That a decision had been reached does not mean that it has been put into operation. Thus, Eggleston did not falsely state that USCIS had already produced documents in her supplemental declaration. Because plaintiff fails to overcome the presumption of good faith, the Court accords the Eggleston declarations substantial weight in evaluating USCIS's compliance with its FOIA obligations.

After reviewing the declarations, the Court concludes that USCIS has shown that it conducted a legally adequate search for documents responsive to plaintiff's FOIA request. The first set of documents that plaintiff requested is USCIS's "entire immigration file ('A-file')" on plaintiff's client.[27] USCIS describes its search for the A-file in Eggleston's original declaration. After describing her position with USCIS and her familiarity with plaintiff's FOIA request,[28] Eggleston states that upon reviewing the request, the agency determined that the responsive documents "would be located at the

---

[27]    R. Doc. 1 at 7.

[28]    R. Doc. 9-1 at 1-2.

USCIS Field Office in New Orleans, Louisiana."[29]  Eggleston then names the specific records system that government personnel searched[30] and states that NRC personnel found an A-file bearing the name and identification number of plaintiff's client.[31]  Finally, Eggleston states that she is confident that NRC identified all offices to be searched and that "there is no reason to presume any of the other USCIS Directorates or program offices would likely have responsive records."[32]

The Eggleston declaration establishes that USCIS conducted an adequate search for plaintiff's client's immigration file.  USCIS identifies which records system it searched by name.  It also avers[33] that its search was reasonably designed to locate responsive documents.  The Court finds no reason to doubt USCIS's contention.  Clearly, the agency's search for-- and discovery of--the requested A-file in the database where A-files are

---

[30]     *Id.* at 4-5 ("NRC conducted a general search for records in the USCIS system of records referred to as the Department of Homeland Security U.S. Citizenship and Immigration Services, Immigrations and Customs Enforcement, Customs and Border Protection - 001 Alien File, Index, and National File Tracking System of Records. . . .").

[31]     *Id.* at 5.

[32]     *Id.*

[33]     Plaintiff argues that Eggleston's declaration fails to aver that USCIS searched all files likely to contain relevant documents.  *See* 19-2 at 14.  But paragraph eleven plainly states: "USCIS/NRC personnel determined that the search was reasonably designed to locate any responsive documents subject to the FOIA that are in the USCIS's control." R. Doc. 9-1 at 5.  Plaintiff's argument is therefore without merit.

maintained demonstrates that its methods were "reasonably expected to produce the information requested." *Batton*, 598 F.3d at 176.

In addition to the A-file, plaintiff requested electronic and handwritten notes concerning various applications and petitions relating to his client. He also requested "any emails sent to, or sent from, any government employee working at the USCIS New Orleans Field Office" that mention his client's name or identification number.[34] USCIS describes its search for these items in Eggleston's supplemental declaration, dated October 5, 2015. Eggleston states that a District Director, the Director for the New Orleans Field Office, and New Orleans counsel received search taskings in connection with plaintiff's FOIA request and that the Field Office determined that five individuals "may have responsive records."[35] Eggleston provides each person's name and describes where each one searched for responsive records, which search terms they used, and how many pages of documents they discovered.[36] For example, Eggleston states: "one page of responsive records . . . [was] located in Mr. Wormser's e-mail archives and desktop computer [by] searching [plaintiff's client's] name and

---

[34]     R. Doc. 1 at 7.

[35]     R. Doc. 18-3 at 2.

[36]     *Id.* at 2-3.

a-number."[37]   Finally, Eggleston states that USCIS and NRC personnel determined that the search was reasonably designed to locate any and all responsive documents subject to FOIA that are within USCIS's control.[38]

These statements establish the lawfulness of USCIS's search for notes and emails.  USCIS describes each step that the New Orleans Field Office took to locate responsive documents.  It also names every individual involved in the search and specifically describes each person's search methods, including the locations searched and the search terms used. Contrary to plaintiff's assertion, this description is neither vague nor conclusory.  It contains specific details about who searched for records and how they approached the task, thereby permitting the Court to evaluate the adequacy of USCIS's efforts.  *See Oglesby*, 920 F.2d at 68 (concluding that an affidavit "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched" is sufficient to allow a court to determine if the agency's search was adequate); *Gahagan*, 2015 WL 5321749, at *5 (holding that agency declarations that describe "the places searched, the persons

---

[37]    *Id.* at 2.  Eggleston provides similar information with respect to the other four individuals identified as possibly having documents responsive to plaintiff's request.

[38]    *Id.* at 3.

conducting the searches, and the search terms employed" establish a legally adequate search).  Based on USCIS's description and its averment that its "search was reasonably designed to locate any and all responsive documents," the Court finds that USCIS conducted an adequate search for the notes and emails described in plaintiff's FOIA request.

Plaintiff faults USCIS for failing to explain why it limited its search to the personnel, databases, and files identified in Eggleston's amended declaration.  Citing cases from the District of Columbia, plaintiff argues that USCIS is required to explain why it searched for responsive records in some locations but not in others.[39]  This argument fails for two reasons.  First, the District of Columbia cases upon which plaintiff relies are not binding on this Court, and plaintiff cites no Fifth Circuit authority holding that an agency must explain why it declined to take particular steps in conducting its FOIA-mandated search.  Indeed, the Fifth Circuit has held that "[t]here is no requirement that an agency search every record system," *Batton*, 598 F.3d at 176, suggesting that an agency's declarant need not identify every path *not* taken in order to demonstrate the adequacy of its search.

---

[39]    R. Doc. 19-2 at 10-14.

Second, Eggelston's amended declaration closely resembles declarations that the Fifth Circuit deemed sufficient in *Batton v. Evers*. There, the responding agency submitted two declarations. *Id.* One stated that the office searched "internal databases and systems of record"; the other listed "the particular databases that were searched" and explained that "these databases contain the type of information requested by [plaintiff]." *Id.* The Fifth Circuit held that these declarations sufficed to prove that the agency performed a lawful search. *Id.* Like the *Batton* declarations, Eggleston's amended declaration identifies specific locations in which information of the type that plaintiff requested could be located. It also provides the name of each person whose files were searched and provides the exact terms that were used to search each person's email accounts, computer files, and other record systems. The amended declaration is therefore sufficient under Fifth Circuit precedent.

For these reasons, the Court finds that USCIS has conducted a lawful search, using "methods which can be reasonably expected to produce the information requested" in plaintiff's FOIA request. *Id.* Insofar as plaintiff's motion for summary judgment seeks to compel USCIS to complete a more extensive search, the motion is denied. The Court grants USCIS's motion for summary judgment with respect to the adequacy of its search efforts.

18

## C.   USCIS's Referral of Responsive Documents to the Department of State

The Court now considers whether USCIS improperly referred four pages of responsive records to the U.S. Department of State.   Plaintiff submits to the Court four completely redacted pages of documents that he received from USCIS, each of which bears the notation, "Referred to U.S. Department of State."[40]   Plaintiff argues that it is unlawful under FOIA to refer responsive agency records to another agency for longer than 20 days.[41] USCIS admits that it referred four pages of responsive documents to the Department of State, rather than releasing them to plaintiff, but contends that the referral is lawful under the circumstances of this case.[42]

It axiomatic that "[i]f an agency receives a FOIA request for documents within its possession, the agency is responsible for processing the request and cannot simply refuse to act on the ground that the documents originated elsewhere."   *Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State*, No. 13-CV-1573 (KBJ), 2015 WL 5730606, at *11 (D.D.C. Sept. 29, 2015) (quoting *Keys v. Dep't of Homeland Sec.*, 570 F.

---

[40]   R. Doc. 12-1 at 4-7 (Exhibit One to Reply Brief in Support of Plaintiff's Motion for Summary Judgment).

[41]   R. Doc. 12 at 10.

[42]   R. Doc. 18-1 at 9-10.

Supp. 2d 59, 66 (D.D.C. 2008).   Although the Fifth Circuit has not addressed the issue, the D.C. Circuit has held that "an agency may adopt procedures by which documents in the agency's possession, but which did not originate with the agency, may be referred to the originating agency for processing." *Keys*, 570 F. Supp. 2d at 66-67 (citing *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983)).   The lawfulness of an agency's referral procedure is "best determined on the basis of [its] consequences." *McGehee*, 697 at 1110.   A referral system constitutes a "withholding" under FOIA "if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them."   *Id.*   A withholding of this sort "will be deemed improper unless the agency can offer a reasonable explanation for its procedure."   *Id.*   The Court finds the D.C. Circuit's analysis persuasive and adopts it here.   Because plaintiff's only argument in favor of summary judgment is that referral of documents responsive to a FOIA request is *per se* unlawful,[43] plaintiff's motion is denied with respect to referral.

Under the standards articulated by the D.C. Circuit, USCIS's motion for summary judgment fails as well.   To demonstrate its entitlement to

---

[43]     R. Doc. 12 at 10 ("FOIA simply does not allow an agency to withhold agency records for more than 20 working days, via a so-called 'referral' or for any other reason.").

judgment as a matter of law, USCIS must show that it has complied fully with its FOIA obligations. USCIS first argues that because it referred only four out of 592 responsive pages of documents in its possession, its referral does not constitute an improper withholding.[44] The page count, however, is not dispositive. USCIS is not absolved of its FOIA obligation with respect to records that originated with the Department of State merely because it happens to have many internally-produced documents on hand as well. Instead, the issue is whether USCIS's referral procedure significantly delays or impairs plaintiff's ability to obtain those records that were referred instead of released. *Id.*

USCIS next contends that inter-agency referrals are "quite common" and that in past cases in which USCIS has acquitted itself of a FOIA request by referral, the referred-to agency has processed and released the records in a timely manner.[45] This argument is also unavailing. Each case stands on its own facts, and, as the party moving for summary judgment, USCIS bears the burden of showing that its referral procedure is "reasonable under the circumstances." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1118 (D.C. Cir. 2007) (citing *McGehee*, 697 F.2d at 1110). Here, USCIS informed

---

[44]    R. Doc. 18-1 at 9-10.

[45]    *Id.*

plaintiff that it had referred four pages of documents to the Department of State on July 31, 2015.   Plaintiff contends that those documents had not been processed as of October 25, 2015.   USCIS has not explained, in light of these circumstances, why its referral will not significantly delay plaintiff's FOIA request or impair his ability to obtain responsive agency records. Therefore, the Court denies USCIS's motion for summary judgment with respect to documents that it referred to the Department of State.

### D.   The *Vaughn* Index

Next, the Court considers the adequacy of USCIS's *Vaughn* indexes. A *Vaughn* index, named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), is a "routine device through which the defendant agency describes the responsive documents withheld or redacted and indicates why the exemptions claimed apply to the withheld material."   *Batton*, 598 F.3d at 174 (quoting *Jones v. FBI*, 41 F.3d 238, 241 (6th Cir. 1994)).   An adequate *Vaughn* index must provide a "detailed justification" for each of the agency's claimed exemptions to disclosure.   *Stephenson v. I.R.S.*, 629 F.2d 1140, 1145 (5th Cir. 1980).   While resort to a *Vaughn* index is discretionary, a district court "abuses its discretion by refusing to order a *Vaughn* index or similar procedure when it relies 'upon agency affidavit in an investigative context when alternative procedures . . . would more fully provide an

accurate basis for decision.'"  *Batton*, 598 F.3d at 178 (quoting *Stephenson*, 629 F.2d at 1145-46).

USCIS has produced two *Vaughn* indexes in connection with this case--an initial index, dated August 20, 2015, and an October 5, 2015 supplemental index.   Together, these documents describe 51 pages of documents that USCIS wholly or partially withheld and explains why each document was not produced.   USCIS contends that its indexes conclusively demonstrate the lawfulness of each withholding.[46]   Plaintiff argues that the *Vaughn* indexes are deficient in several respects.   In his opposition to USCIS's motion for summary judgment, plaintiff identifies five specific defects in USCIS's indexes and argues that USCIS should be required to provide more information on its decision to withhold certain documents.[47]

For reasons that follow, the Court concludes that four of plaintiff's arguments have merit.   Therefore, USCIS's motion for summary judgment is denied with respect to the withholdings identified below.   Within fourteen (14) days of the entry of this Order, USCIS must file a new *Vaughn*

---

[46]   *Id.* at 7-8.

[47]   R. Doc. 19-2 at 20-21.

index that remedies the deficiencies identified in this section of the Court's Order.[48]

### 1.   FOIA Processing Notes

First, plaintiff contends that USCIS fails to adequately explain its reason for withholding portions of several emails responsive to his request.[49]   This argument is factually incorrect.   USCIS's supplemental *Vaughn* index contains entries for each of the emails in question.[50]   Each entry explains that the "redacted portion" or the "redaction in [the] upper right corner" is a "note made in FOIA processing and is not responsive to the Plaintiff's request."[51]   Plaintiff does not challenge USCIS's characterization of any of these documents; nor does he argue that the agency's FOIA processing notes are, in fact, responsive.   Instead, plaintiff appears to argue that USCIS's explanation is *per se* inadequate because it does not cite any of the nine statutory exemptions to disclosure under

---

[48]   USCIS filed its two *Vaughn* indexes after plaintiff moved for summary judgment. Thus, to the extent that plaintiff's motion sought an order compelling the agency to produce an index explaining its withholdings, the motion is denied as moot.

[49]   R. Doc. 19-2 at 21 ("In addition, USCIS is unlawfully withholding information on the tops of responsive agency records numbered 11, 15, 17, 21-23, 25, 28, and 31 without citing a lawful FOIA exemption.").

[50]   R. Doc. 18-3 at 2-9 (supplemental *Vaughn* index entries 2-9).

[51]   *Id.*

FOIA.  This argument fails.  Because "an agency has no obligation to produce information that is not responsive to a FOIA request," *Menifee v. U.S. Dep't of the Interior*, 931 F. Supp. 2d 149, 167 (D.D.C. 2013), USCIS's explanation that the redacted notations are non-responsive suffices to justify its decision not to produce that information.  Thus, USCIS lawfully withheld the FOIA processing notes from the documents listed in entries two through nine of the supplemental *Vaughn* index.

### 2.    *Responsive Agency Record #572*

Next, plaintiff contends that USCIS's *Vaughn* indexes fail to explain USCIS's withholding of portions of "responsive agency record #572," a partially redacted document which he files as Exhibit Four to his opposition to USCIS's motion for summary judgment.[52]  Neither USCIS's original nor its supplemental *Vaughn* index refer to this document, much less provide a "detailed justification" for USCIS's decision to partially withhold its contents.  *Stephenson*, 629 F.2d at 1145.  Because the Court cannot determine why USCIS believes this document is partially protected from disclosure, the agency has failed to demonstrate that it has complied fully

---

[52]    R. Doc. 19-2, 20; *see* R. Doc. 19-3 (Exhibit Four to Plaintiff's Opposition to USCIS's Motion for Summary Judgment).

with FOIA's mandate.  USCIS must submit a new *Vaughn* declaration that addresses this defect.

### 3. *Responsive Agency Record #334*

Plaintiff also challenges the adequacy of USCIS's explanation for its decision to withhold portions of "responsive agency record #334."[53]  That document, which plaintiff files as Exhibit Four to his opposition to USCIS's motion for summary judgment, contains four redactions.[54]  Beside the first and third redaction, USCIS identifies the statutory exemption that is claims for the withholding.  No such markings appear beside redactions two and four, which prevents the Court from determining USCIS's alleged basis for withholding that information.  USCIS's *Vaughn* index does not clarify matters.  Although that document explains that "the information redacted from this document under (b)(7)(E) reflects the manner in which USCIS conducts background checks,"[55] it does not indicate whether redactions two and four fall within that category of "information."  USCIS must provide more explanation for its decision to partially withhold this document's contents.

---

[53]     R. Doc. 19-2 at 21.

[54]     R. Doc. 19-3.

[55]     R. Doc. 9-1 at 18.

### 4.    *FOIA Exemption Five*

In addition, plaintiff challenges the applicability of FOIA exemption five to two pages of documents,[56] which entry number five of USCIS's supplemental *Vaughn* index describes as a "2 page email chain, dated March 26, 2015, from Cindy N. Gomez, Subject: RE: [plaintiff's client's] I-751 mandamus lawsuit."[57]   FOIA exemption five protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. ' 552(b)(5).   "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."   *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The Fifth Circuit has interpreted exemption five to encompass the attorney-client privilege, the attorney work product privilege, and the deliberative process privilege.   *Shermco Indus., Inc. v. Sec'y of the Air Force*, 613 F.2d 1314, 1318 (5th Cir. 1980).

---

[56]      R. Doc. 19-2 at 24-25.

[57]      R. Doc. 18-3 at 6 (Supplemental *Vaughn* Index entry 5).

USCIS's supplemental *Vaughn* index states that the email chain is protected from disclosure under both the attorney-client privilege and the deliberative process privilege.[58]   The index, however, does not contain enough information to permit the Court to determine whether either privilege applies.   In the context of a FOIA request, "the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege."   *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 33 (D.D.C. 2011) (citing *In re Lindsey*, 148 F.3d 1100, 1105 (D.C.Cir. 1998)).   To invoke the privilege, the agency "must show that the withheld document (1) involves confidential communications between an attorney and [the agency] and (2) relates to a legal matter for which the [agency] has sought professional advice."   *Id.* (quoting *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F.Supp.2d 1, 16 (D.D.C. 2004)).   Here, the supplemental *Vaughn* index explains the agency's assertion of the attorney-client privilege as follows: "This email provides internal discussion between USCIS counsel to USCIS personnel on litigation against the agency."[59] Plaintiff contends, however, that neither of the individuals that the supplemental *Vaughn* index names as participants in the email chain are

---

[58]    *Id.* at 6-7.

[59]    *Id.* at 7.

attorneys.  USCIS does not dispute this assertion.  Nor does it explain why it characterizes an email chain between two non-attorneys as involving a "discussion between USCIS counsel to USCIS personnel."  Without further explanation, the Court cannot evaluate whether USCIS's assertion of the attorney-client privilege is lawful.

USCIS's deliberative process privilege explanation fails as well.  The purpose of the deliberative process privilege is to enhance the quality of agency decisions by assuring individuals "who offer information and opinions to the Government that their communications will be kept in confidence."  *Shermco*, 613 F.2d at 1318.  For the privilege to apply, a document must be both "predecisional" and "deliberative."  *Vaughn v. Rosen*, 523 F.2d 1136, 1144-44 (D.C. Cir. 1975).   A document is "predecisional" if it was generated before the adoption of an agency policy. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also Shermco*, 613 F.2d at 1319.  It is "deliberative" if it "it reflects the give-and-take of the consultative process."  *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States*, 617 F.2d at 866).  In other words, the document must be such that public disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and

thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987). The burden is on the agency to "establish[] what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868.  Conclusory assertions that merely parrot the legal test do not suffice.  *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

Through its amended *Vaughn* index, USCIS claims that the email chain contains "internal Agency discussion points concerning a litigation matter."[60]  It further explains that "[t]he information redacted from this e-mail chain raises issues as to internal Agency discussions relating to possible litigation issues. . . . Public disclosure of this document would chill open communication between agency personnel."[61]   While USCIS's reference to "potential" litigation matters demonstrates that the email chain is predecisional, its description of its deliberative process is too vague to justify the agency's claim to exemption five protection.  *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977)

---

[60]    *Id.*

[61]    *Id.*

(noting that "[p]redecisional materials are not exempt merely because they are predecisional").  For instance, the supplemental *Vaughn* index does not provide any details about the type of information that the document contains or how the redacted discussion contributed to the agency's deliberations on litigation strategy.  *See Hall v. U.S. Dep't of Justice*, 552 F. Supp. 2d 23, 29 (D.D.C. 2008) (concluding that agency's justification for withholding portions of email was insufficient when agency failed to describe the role that the email played in the agency's deliberations).  Moreover, the index's assertion that disclosure of the withheld information "would chill open communication" is conclusory and lacks factual support.  Thus, the supplemental *Vaughn* index fails to demonstrate that the deliberative process privilege applies.

Upon reviewing USCIS's *Vaughn* indexes, the Court finds that two of the agency's other exemption explanations are inadequate for a similar reason.  Entries three and nine of the supplemental *Vaughn* index give vague and conclusory explanations for USCIS's decision to withhold information responsive to plaintiff's FOIA request.  With respect to each of these documents, USCIS shall produce a new *Vaughn* index that provides a more detailed justification for the agency's claimed FOIA exemption.

### 5.   *Segregability Analysis*

Finally, plaintiff challenges the adequacy of USCIS's segregability analysis, as explained in the agency's *Vaughn* indexes and its declarations. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."   5 U.S.C. ' 552(b).   Accordingly, once an agency identifies a document that it believes qualifies for a FOIA exemption, "it must undertake a segregability analysis, in which it separates the exempt from the non-exempt portions of the document, and produces the relevant non-exempt information." *Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 108 (D.D.C. 2005) (citing *Vaughn*, 484 F.2d at 825).   To prevail in a motion for summary judgment, the agency must demonstrate that it has satisfied its segregability analysis obligation, which it may do by using its *Vaughn* index in conjunction with an agency declaration. *See e.g.*, *Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Protection*, No. CIV.A. 04-003777 JDB, 2005 WL 3274073, at *3 (D.D.C. Sept.22, 2005).   Under Fifth Circuit law, "[i]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Batton*, 598 F.3d at 178 (citing *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C.Cir. 1992)).

Here, USCIS has withheld two documents[62] in their entirety, indicating that it believes that neither document is subject to reasonable efforts to separate exempt from non-exempt information. Plaintiff challenges this conclusion with respect to both documents, arguing that USCIS has failed to prove that it conducted an adequate segregability review. The first document is described in entry 19 of the *Vaughn* index as a "1 page memorandum from the New Orleans Field Office to the Acting Director." The second is a three-page document, which supplemental *Vaughn* index entry one describes as a "draft decision memorandum prepared by USCIS personnel for review by Agency decision makers." The Court finds that while USCIS has failed to carry its segregability burden with respect to the first document, it has met its statutory obligation with respect to the second.

As noted, USCIS has produced two declarations in connection with this litigation. Both contain an identical, one-sentence explanation of the agency's segregability analysis: "It has been determined that no further segregation of meaningful information in the withheld documents is

---

[62]   Despite plaintiff's argument to the contrary, the four pages of documents that USCIS referred to the Department of State were not "withheld." Rather, they were referred to the Department of State for further processing. While USCIS is required to provide additional information concerning its referral noted in Section III.C above, it need not necessarily incorporate that information into its *Vaughn* index.

possible without disclosing information that warrants protection under the law."[63]   Because that statement is generalized and conclusory, the declarations alone do not prove that USCIS's analysis was adequate.  *See Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 301 (D.D.C. 1999) (finding that an agency's declaration was "patently insufficient" when it merely parroted FOIA's statutory language).  Thus, the Court turns to the relevant *Vaughn* index entries to determine whether USCIS has provided facts to support its non-segregability determination.

With respect to the first document, USCIS explains its withholding decision in entry 19 of its original *Vaughn* index, which states: "the portion of this document withheld as deliberative is comprised of predecisional case specific information reelecting the thought process of Agency Officers."[64] That the agency describes a "portion" of the document as being exempt suggests that other portions might not contain protected information.  The index does not indicate whether USCIS considered this possibility.  Nor does it provide any explanation for the agency's conclusion that the document must be withheld in full, rather than being partially disclosed. Therefore, USCIS's segregability analysis is deficient with respect to the

---

[63]     R. Doc. 9-1 at 6; R. Doc. 18-3 at 3.

[64]     R. Doc. 9-1 at 14.

document described in *Vaughn* index entry 19.  The Court orders USCIS to produce a new *Vaughn* index that more fully explains its non-segregability determination.

By contrast, entry 1 of the supplemental *Vaughn* index contains enough detail to support USCIS's decision to withhold the three-page "draft decision memorandum" in its entirety.  The index entry invokes the deliberative process privilege, explaining that the document "is comprised of a predecisional memorandum reflecting the recommendations and thought processes of Agency Officers."[65]  In addition, the entry specifically describes the deliberations at issue: "The matter discussed relates [to] a decision on [plaintiff's client's] immigration benefit."[66]  It also explains the memorandum's role in USCIS's deliberation process, noting that the memorandum contains "proposed language to be used to notify an immigrant of an Agency decision."[67]  The Court finds that this detailed *Vaughn* index entry, combined with USCIS's declaration that no further segregation is possible, demonstrate that the document in question is not segregable.  *See Peter S. Herrick's*, 2005 WL 3274073, at *3 ("[T]he

---

[65]   R. Doc. 18-3 at 4-5.

[66]   *Id.*

[67]   *Id.*

35

combination of a comprehensive, reasonably-detailed *Vaughn* index and an affidavit confirming that a line-by-line review of each document determined that no redacted information could be disclosed will satisfy the agency's obligation.").   Thus, USCIS has lawfully withheld in full the document described in entry one of the supplemental *Vaughn* index.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment and GRANTS IN PART AND DENIES IN PART USCIS's motion for summary judgment.   USCIS is entitled to judgment as a matter of law with respect to the adequacy of its search.   But USCIS has failed to carry its burden of demonstrating full FOIA compliance with respect to (1) its referral to the Department of State of four pages of agency records that are responsive to plaintiff's FOIA request and (2) its withholding of certain documents in, in whole or in part, as discussed more fully in Section III.D of the Court's Order.

IT IS ORDERED that within fourteen (14) days of the entry of this Order, USCIS shall produce a new *Vaughn* index that remedies the deficiencies identified in Section III.D of the Court's Order.


New Orleans, Louisiana, this  2nd   day of December, 2015.


_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE